Accordingly, we deny Clayton's motion for stay of execution pending appeal.

**Cecil CLAYTON, Plaintiff–Appellant**

v.

**George LOMBARDI; Troy Steele, Defendants–Appellees.**

No. 15–1572.

United States Court of Appeals, Eighth Circuit.

Submitted: March 17, 2015.

Filed: March 17, 2015.

91, which the Missouri Supreme Court denied

Elizabeth Unger Carlyle, Law Office of Elizabeth Unger Carlyle, Susan M. Hunt,

on March 14, 2015.

Law Office of Susan M. Hunt, Kansas City, MO, for Plaintiff–Appellant.

Cecil Clayton, Mineral Point, MO, pro se.

Caroline Coulter, Assistant Attorney General, Michael Joseph Spillane, Assistant Attorney General, Attorney General's Office, Jefferson City, MO, for Defendants–Appellees.

Before LOKEN, BYE, and SMITH, Circuit Judges.

PER CURIAM.

Cecil Clayton moves for stay of his execution scheduled for March 17, 2015, at 6:00 p.m., pending full briefing and argument of his appeal from the district court's dismissal of his complaint, brought under 42 U.S.C. § 1983, seeking an emergency declaration of his rights under the Eighth and Fourteenth Amendments. The district court dismissed Clayton's complaint, finding that it is frivolous and fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

I.

Clayton's § 1983 complaint alleges that even if found competent, Clayton would be subject to cruel and unusual punishment due to his brain injury. Specifically, he argues that (1) the State of Missouri, in its discretion, may offer two pre-execution drugs, midazolam and valium, to calm him, but that his brain injury renders him unable to make a reasoned and competent decision whether to take the pre-execution drugs; (2) the particular nature of his brain injury, combined with the manner in which these two drugs affect the brain, creates an elevated risk of an atypical reaction to the pre-execution drugs, which is likely to leave him agitated and confused and poses a heightened likelihood that intravenous (IV) access will be difficult; (3)

if the State withholds the pre-execution drugs from Clayton simply because of his disability, such action would violate Clayton's rights to equal protection and the right to be free from cruel and unusual punishment; and (4) the administration of the pre-execution drugs, combined with Clayton's brain injury, could produce extreme psychological disarray and decompensation, such that he might not understand why he is being executed.

II.

■ "[A] stay of execution is an equitable remedy." *Hill v. McDonough,* 547 U.S. 573, 584, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006) (citation omitted). "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Id.* (citations omitted).

Clayton argues that the district court made clearly erroneous factual findings and misconstrued the law by not recognizing that his "lawsuit is based on the *unique* risks to him arising from his severe and undisputed brain damage." Motion for Stay at 2. According to Clayton, his suit is distinguishable from prior lethal-injection actions because it "is based on the singular risks associated with Mr. Clayton's severe brain damage—he is missing 20% of his frontal lobe—and physiological impact thereof." *Id.* at 4. Clayton contends that he is likely to succeed on the merits of his appeal of the district court's order dismissing his § 1983 complaint because "he has presented concrete, uncontroverted medical evidence and an expert affidavit that Missouri's lethal injection protocol, *as applied to him,* creates a substantial risk of severe, needless pain or a lingering, torturous death; or that he will not in fact die, but be paralyzed and left in

a vegetative state for the remainder of his life." *Id.* at 8.

■ Having reviewed Clayton's § 1983 complaint and the factual allegations stated therein, we conclude that the district court's order was in accordance with *Zink v. Lombardi,* 783 F.3d 1089, No. 14–2220, 2015 WL 968176 (8th Cir. Mar. 6, 2015) (holding that successfully pleading facts to demonstrate a substantial risk of severe pain, as required to state a plausible Eighth Amendment claim in the context of an attack upon a state's execution protocol, requires the prisoner to plead more than just a hypothetical possibility that an execution could go wrong, resulting in severe pain to a prisoner; the Eighth Amendment prohibits an objectively intolerable risk of pain, rather than simply the possibility of pain).

### III.

Accordingly, we deny Clayton's motion for stay of execution pending appeal.

BYE, Circuit Judge, dissenting.

I would grant a stay of execution to Cecil Clayton. I disagree with the majority that *Zink v. Lombardi,* No. 14–2220, 2015 WL 968176, 783 F.3d 1089 (8th Cir. March 6, 2015), controls this as-applied challenge to Missouri's use of compounded pentobarbital.

Missouri death row inmate Cecil Clayton raises an as-applied challenge to Missouri's current execution protocol and has filed a motion for stay of execution. Clayton argues, and the uncontested evidence shows, he is missing a large portion of his frontal lobe as a result of a sawmill accident. Clayton alleges that an attempted execution pursuant to Missouri's current lethal injection protocol would lead to a gratuitous infliction of pain and suffering in violation of the Eighth Amendment. This is an as-applied Eighth Amendment challenge to Missouri's current execution protocol.

The district court failed to acknowledge Clayton's claim as an as-applied challenge and erroneously stated the issue was resolved in *Zink,* No. 14–2220, 2015 WL 968176, 783 F.3d 1089, to which Clayton was a party. In opposition to Clayton's request for stay, Missouri makes the same argument. Missouri is correct that in *Zink,* the Eighth Circuit recently found the plaintiffs failed to sufficiently demonstrate the use of compounded pentobarbital *for a healthy death row inmate* rises to the level of "sure or very likely" to cause serious harm or severe pain. *Id.* at *6. What *Zink* did not decide, or even address, is whether the use of compounded pentobarbital for anyone except a healthy inmate creates an unconstitutional risk of pain or suffering. More relevant to Clayton's argument is *Bucklew v. Lombardi,* No. 14–2163, 2015 WL 968159, 783 F.3d 1120 (8th Cir. Mar. 6, 2015). In *Bucklew* the district court dismissed the as-applied Eighth Amendment challenge to Missouri's execution protocol, and the Eighth Circuit reversed the dismissal and remanded for the case to proceed on the merits. A similar remand is warranted here.

Clayton's unrebutted medical evidence demonstrates the requisite sufficient likelihood of unnecessary pain and suffering beyond the constitutionally permissible amount inherent in all executions. Clayton obtained and attached to his complaint a declaration from Dr. Mark J.S. Heath, an assistant professor of clinical anethesiology at Columbia University in New York. Dr. Heath states he is familiar with Missouri's current execution protocol and Clayton's brain damage. As relevant to this challenge, Dr. Heath stated as follows:

If Missouri administers defective pentobarbital to Mr. Clayton there is an increased risk of a tortuous outcome. Because of the existing damage to his brain, he is particularly vulnerable and sensitive to the effects of any further brain damage. If defective pentobarbital fails to kill him but instead exposes him to a period of reduced or absent breathing, the resulting further damage to his brain could leave him in a profoundly neurologically damaged or destroyed state.

In response, Missouri alleges the current execution protocol, compounded pentobarbital, has yet to cause a painful or tortuous death. However, Missouri fails to put forth any evidence to show compounded pentobarbital can be safely administered to Clayton in light of his significant brain injury. Missouri merely notes the executions of healthy death row inmates have not appeared to be unconstitutionally painful. Missouri, however, has not put forward evidence showing the same compounded pentobarbital will be used for Clayton's execution and Missouri has not contested Clayton's description of his medical condition or Clayton's particular risk factors. Missouri does not seriously contend Clayton is not at an increased risk of pain and suffering if an under-dose of pentobarbital is administered; rather, Missouri hopes the compounded pentobarbital used in Clayton's execution will be correctly compounded, stored, and injected. Without the benefit of any evidence from Missouri, it is inappropriate to reject the uncontested evidence put forward by Clayton.

As I have noted in prior dissents, Missouri death row inmates have put forward substantial evidence demonstrating an unconstitutional risk of harm from compounded pentobarbital. *See e.g., Zink,* No. 14–2220, 2015 WL 968176, at *19, 783 F.3d 1089, at 1113–14 (Bye, J., dissenting). It is not merely pentobarbital itself which presents a risk, but also the method used to create the pentobarbital. Missouri has, at every chance, prevented its death row inmates from learning the source of the components; where, when, and by whom the alleged pentobarbital is compounded; and how and for how long the alleged pentobarbital is stored. Missouri has also refused to test or allow testing on the drugs, meaning Clayton has no ability to test for potency, purity, and other measures.

As applied to Clayton, the concerns are far greater. Clayton has uncontested serious brain damage and is missing a large portion of his frontal lobe. Missouri does not contest that Clayton, because of this brain damage, is more susceptible to the effects of poorly compounded pentobarbital. And Missouri fails to put forth an expert to contravene the conclusion that "[t]he use of non-FDA-approved pentobarbital amplifies the risk of further injury to his already vulnerable and fragile brain." Thus, I would stay Clayton's execution and allow an evidentiary hearing to proceed below. If Missouri wishes to execute Clayton, they are required to do so in a way which does not create an unconstitutional risk of pain and suffering.